IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01371-PAB-MJW

CHRISTOPHER P. IMESON,

Plaintiff,

v.

MARK HURLBERT, in his official and individual capacities,
TAMAR WILSON, in her official and individual capacities,
TOWN OF AVON, COLORADO,
BRIAN KOZAK, in his official and individual capacities,
JEREMY ARNDT, in his official and individual capacities, and
YVONNE RAMIREZ, in her official and individual capacities,

Defendants.

---

### RECOMMENDATION ON
### (1) MOTION TO DISMISS PROSECUTOR DEFENDANTS (Docket No. 5),
### (2) MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) and 12(b)(6) (Docket No. 9)
### FILED BY DEFENDANTS KOZAK AND RAMIREZ, and
### (3) DEFENDANT TOWN OF AVON'S MOTION TO DISMISS PURSUANT TO RULE
### 12(b)(6) (Docket No. 16)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by Judge Philip A. Brimmer on May 25, 2011 (Docket No. 2).

### PLAINTIFF'S ALLEGATIONS

The pro se plaintiff, Christopher P. Imeson, alleges the following in his Complaint

filed on May 24, 2011.  Plaintiff and Sheryl Lynn Bradley lived together for nearly five

years, during which they purchased several properties, vehicles, furnishings,

appliances, etc., operated a small unincorporated property management company, and

partnered in purchasing, remodeling, renting, and maintaining several real estate holdings in the Vail, Colorado, area.  The properties and vehicles were titled in Bradley's name.  On February 5, 2006, however, plaintiff decided to end his relationship with Bradley and moved into their vacant studio condominium, taking his 1998 Ford truck which was titled in Bradley's name.  Bradley became very upset and declared that since the property and vehicle were titled in her name, plaintiff had to return the truck to her or she would report it stolen.

Plaintiff and Bradley each hired an attorney to protect their interests and settle their civil property dispute.  On February 8, 2006, plaintiff and Bradley through counsel reached an oral agreement to maintain a peaceable status quo with plaintiff retaining possession and use of the truck.  On March 6, 2006, plaintiff accepted Bradley's settlement offer which included ownership and title of the truck, but Bradley failed to provide plaintiff with settlement documents or the vehicle title as agreed.

On March 12, 2006, plaintiff received a voice-mail message from defendant Jeremy Arndt of the Avon Police Department.  Plaintiff called Arndt and was informed that Bradley was at the Avon Police Station claiming plaintiff had stolen her 1998 Ford truck on February 5, 2006.  Plaintiff explained the situation to Arndt, provided his attorney's information, and asked Arndt to contact Officer Luse of the Vail Police Department who had been contacted by Bradley and plaintiff the previous day.  Arndt responded that he would have to investigate and would call plaintiff back in an hour.  An hour passed, and plaintiff called Arndt to see what he had to do with the truck.  Arndt advised plaintiff that since it was a Sunday, he had been unable to reach anyone and that plaintiff should keep the truck until Monday when Arndt could investigate properly.

3

The following day, however, on March 13, 2006, plaintiff was arrested in his home at gunpoint and charged with first degree aggravated motor vehicle theft, harassment, and criminal tampering.  Colorado law requires a 24-hour period of knowingly refusing to return a vehicle in order to charge someone with felony motor vehicle theft.  Arndt had advised plaintiff to maintain possession of the vehicle in order to charge the plaintiff unlawfully.  Arndt and Ramirez conspired to falsify and submit a fraudulent Affidavit for Arrest Warrant with Ramirez as Affiant after 24 hours had passed.  Despite never having spoken with the plaintiff, Ramirez claimed multiple false statements attributed to plaintiff and by Bradley and omitted critical elements such as the civil nature of this matter, the attorneys involved, the agreement which guaranteed plaintiff possession and use of the truck, or the settlement agreed in which Bradley was bound to provide plaintiff with title to the vehicle.  This fraudulent Affidavit for Arrest Warrant violated plaintiff's rights to due process of law, equal protection, and illegal search and seizure of his person and property.

Plaintiff was taken to the Eagle County Detention Center, and although bail had been set, he was held with no opportunity to bond out for 26 hours.  While he was in jail, officers of the Avon Police Department and employees of the defendant Town of Avon performed a "Civil Standby" at his residence during which Bradley was allowed to enter plaintiff's residence unlawfully, destroy his property, remove some of plaintiff's property, and take possession of plaintiff's truck and dog.

On March 22, 2006, during a restraining order hearing in the Eagle County Courts, Bradley testified that plaintiff had the right to use the vehicle in question, did not steal the vehicle from her, and had never committed an act of violence against her.

4

This testimony removed any probable cause to believe that plaintiff had stolen the truck or committed an act of domestic violence.  Therefore, all further actions taken against him after March 22, 2006, were malicious in nature and designed not to prosecute a crime but to protect defendants Town of Avon, Arndt, and Ramirez from any legal recourse for the offenses committed against the plaintiff.

Plaintiff contacted then Avon Colorado Police Chief defendant Brian Kozak and filed a complaint against Arndt and Ramirez, alleging that Arndt had wholly invented the crimes charged and collaborated with Ramirez to falsify the Affidavit for Arrest Warrant. Kozak ordered then Sergeant Mike Leake to conduct an internal affairs investigation, which resulted in a claim that Ramirez was a trainee officer at the time "and didn't understand 'cut and paste' to explain the false statements in her affidavit for arrest warrant."  (Docket No. 1 at 8 ¶ 27).  Plaintiff informed Kozak that he felt this investigation was a cover up and that he would be suing the Avon Police Department for violations of his rights.

Defendant prosecutor Tamar Wilson with co-prosecutor Greg Hoerber brought plaintiff to trial on March 22, 2007, on charges of first degree aggravated motor vehicle theft and criminal tampering.  Throughout the jury trial, Wilson repeatedly made prejudicial statements, such as "This is a Domestic Violence Case," despite there being no evidence or testimony of any violence.  Wilson then knowingly presented the coached, false, and contradictory testimonies of Bradley, Arndt, and Ramirez in order to achieve a conviction against the plaintiff.  Wilson conspired with Arndt and Ramirez to present false testimony to the jury.

Upon conviction, plaintiff filed a pro se motion for a new trial, returned to the

Avon Police Department, and alleged to Kozak that Arndt and Ramirez had committed perjury during the trial.  Plaintiff subpoenaed the Avon Police Department Internal Affairs Investigation Report to support his motion for new trial and prove Arndt's and Ramirez's perjured testimony.  Kozak delivered the Report to the Eagle County courthouse, but plaintiff alleges that Kozak removed several pages of the file including all statements made by Bradley and several pages of sworn statements made by Arndt and Ramirez.  Kozak's removal of such documents violated plaintiff's right to due process of law and equal protection and implicates Kozak in a conspiracy to cover up Arndt's and Ramirez's actions.

In December 2007 during the hearing on plaintiff's motion for a new trial, trial Judge Frederick Gannett stopped the proceedings and declared in open court and on the record that he was "granting the Defendant's Motion for a Directed Verdict" of acquittal made at trial, explained his reasoning, and declared that the Motion for a Directed Verdict was granted.  "The Judge then stated that he wasn't certain if a Directed Verdict could be procedurally granted due to the time that had passed, that he needed to research this issue and therefore the bonds would stay in place, but that if a directed verdict of acquittal could be procedurally granted then that is what he would enter." (Docket No. 1 at 10 ¶ 35).  In plaintiff's opinion, when the court granted the directed verdict and declared that he would enter a written final order to that effect if it were procedurally possible, the court "had attached Jeopardy and no further action could be taken against the Plaintiff on these charges."  (Docket No. 1 at 10, ¶ 36).  However, "[i]n January of 2008, Judge Gannett then confusingly and in violation of the Plaintiff's Constitutional Protections against Double Jeopardy, entered an order granting

6

a New Trial based on Plain Error." (Docket No. 1 at 10, ¶ 37). Defendant Wilson then filed a Notice of Appeal, but according to plaintiff, Wilson was barred from doing so by statute and the Fifth Amendment and unlawfully subjected plaintiff to a second jeopardy.

Plaintiff then filed a complaint with Wilson's direct supervisor, defendant Mark Hurlbert, who claimed it was a personnel issue and that he could do nothing about Wilson until such time as all legal matters were resolved. Plaintiff explained that it was not a personnel issue but persons in Hulbert's employ using his name and office to violate plaintiff's constitutional and statutory rights, commit crimes against plaintiff, and directly mislead the court. Hulbert nevertheless refused to investigate or manage Wilson's actions and told plaintiff he should call the FBI. Plaintiff spoke to an FBI agent about the actions of Wilson and the Avon Police Department.

Plaintiff was forced to defend the appeal pro se because he did not have funds for an attorney and no attorney assistance was offered. The appeal was denied, and the case was remanded back to the District Court for a new trial.

Upon remand in January 2009, the case was reassigned to Deputy District Attorney Mark Brostrom. During a hearing in May 2009, plaintiff asserted his constitutional right to be free from double jeopardy, but Judge Gannett "stated that he had never said he was granting a directed verdict of acquittal and therefore jeopardy had not attached. Plaintiff then asserted his Constitutional right to a speedy trial." (Docket No. 1 at 12 ¶ 44). Judge Gannett asked DA Brostrom to investigate and set a second trial for June 1, 2009, which according to plaintiff was the last day possible for trial if the speedy trial clock began upon the remand. DA Brostrom waited until May 29, 2009, to dismiss the charges against the plaintiff.

Plaintiff alleges that the District Attorney's Office and its employees never had any intention to retry him but filed their appeal and delayed dismissal until the last possible moment in order to keep him on bond for the longest possible amount of time and causing him as much harm as possible.  Such delay was a "ruse" designed to allow the statute of limitations to expire and prevent the filing of this lawsuit.  Defendant Hurlbert was responsible for the actions of his employees, Wilson and Brostrom, and his failure to manage, train, or correct them directly led to the constitutional violations.

Wilson and Hurlbert had no jurisdiction to continue seeking plaintiff's conviction. Arndt and Ramirez had no jurisdiction to bring charges or arrest plaintiff and falsified documents, illegally arrested and detained plaintiff, illegally held plaintiff until his property could be unlawfully removed from his possession, and conspired with Wilson to present false testimony at trial.

Defendants' actions violated plaintiff's rights under the Fourth and Fourteenth Amendments to be free from illegal search and seizure without due process of law and equal protection of the law; violated plaintiff's rights under the Fifth Amendment to be free from being subject for the same offense twice and to be free from deprivation of life, liberty, or property without due process of law; violated plaintiff's rights under the Sixth Amendment to be guaranteed a speedy trial and assistance of counsel; caused plaintiff loss of physical, professional, and personal liberty for 39 months as well as fear of imminent peril at the hands of those sworn to protect him and fear of prison as he was facing up to six years in prison; and caused $60,000 in direct costs for defense, $120,000 in lost wages, $22,000 to replace the vehicle unlawfully removed from his possession, and personal costs.

Based upon the above, plaintiff raised seven claims for relief, but the Fifth Claim for Relief was essentially dismissed when one defendants (Colorado 5th Judicial District Attorney's Office) was dismissed upon plaintiff's motion (see Docket No. 15).  The remaining claims are as follows: (1) claim for damages under 42 U.S.C. § 1983 for injuries set forth above against Arndt, Ramirez, Kozak, Wilson, and Hurlbert; (2) conspiracy claim against Arndt, Ramirez, Kozak, Wilson, and Hurlbert based upon Arndt and Ramirez conspiring to falsify an Affidavit for Arrest Warrant and unlawfully interfering with an ongoing civil dispute, Kozak entering the conspiracy to protect his officers, Wilson entering the conspiracy to prosecute with no probable cause, and Hurlbert entering to protect Wilson and cause plaintiff as much harm and damage as possible; (3) claim of malicious prosecution and abuse of process against Arndt, Ramirez, Wilson, and Hurlbert; (4) claim of false imprisonment and illegal seizure against Arndt and Ramirez; (6) claim pursuant to 42 U.S.C. § 1983 against the Town of Avon Colorado; and (7) a claim against the Town of Avon for "Constitutional Rights Violations, false arrest and imprisonment, illegal seizure of property committed by Officers Arndt and Ramirez" based upon the theory of *respondeat superior*.

In a Status Conference held on August 30, 2011, plaintiff was directed to serve defendant Jeremy Arndt forthwith and file Proof of Service with the court.  (See Docket No. 15).  No such proof of service has yet been filed by the plaintiff, and defendant Arndt has not answered or otherwise responded to the Complaint.

**DEFENDANTS' MOTIONS**

9

Now before the court for a report and recommendation are the following three dispositive motions:  (1) Motion to Dismiss Prosecutor Defendants (Docket No. 5), (2) Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (Docket No. 9) filed by Defendants Kozak and Ramirez, and (3) Defendant Town of Avon's Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket No. 16).   Plaintiff filed a response to each of these three motions (Docket Nos. 11, 12, 20).  Replies were filed to each.  (Docket Nos. 19, 17, 25).  The court has considered all of these motion papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of its file.  The court now being fully informed makes the following findings, conclusions of law, and recommendations.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

10

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp. 2d
1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must
accept all well-pled factual allegations in the complaint as true and resolve all
reasonable inferences in the plaintiff's favor.   Morse v. Regents of the Univ. of Colo.,
154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32
(10th Cir. 1996).   A motion to dismiss pursuant to Rule 12(b)(6) alleges that the
complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P.
12(b)(6).   "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does
not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v.
RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'
requires more than labels and conclusions, and a formulaic recitation of the elements of
a cause of action will not do . . . ."  Bell Atlantic Corp., 550 U.S. at 555 (citations
omitted).  "Factual allegations must be enough to raise a right to relief above the
speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from
conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere
metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of
the pleaded claims is insufficient; the complaint must give the court reason to believe
that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*
claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)

11

(quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

**Motion to Dismiss Prosecutor Defendants**

The two prosecutor defendants who have been served, Mark Hurlbert and Tamar Wilson, move to dismiss the Complaint against them pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that they are protected by absolute immunity for activities "intimately associated with the judicial phase of the criminal process."

"State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities intimately associated with the judicial process."  Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994) (internal quotations, emphasis, and ellipsis omitted).  Prosecutors are entitled only to qualified immunity, however, for investigative or administrative actions.  Id.  To determine whether a prosecutor is entitled to absolute or qualified immunity, "the determinative factor is advocacy because that is the prosecutor's main function."  Id. (internal quotations omitted).  Examples of

12

actions which are protected by absolute prosecutorial immunity include a prosecutor's

initiating a prosecution and presenting the State's case, <u>Imbler v. Pachtman</u>, 424 U.S.

409, 431 (1976), supervision and training of deputy district attorneys concerning

activities "directly connected with the conduct of a trial," <u>Van de Kamp v. Goldstein</u>, 555

U.S. 335, 343 (2009), preparation for a judicial proceeding or trial, including preparation

of a witness to testify, <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 272-73 (1993),

preparation and filing of charging documents, <u>Kalina v. Fletcher</u>, 522 U.S. 118, 129

(1997), and even willfully using perjurious testimony.  <u>Esquibel v. Brian Williamson</u>, 421

Fed. Appx. 813, 816 (10th Cir. 2010) (citing <u>Imbler</u>, 424 U.S. at 431 n.34).  <u>See</u>

<u>Nielander v. Board of County Comm'rs of County of Republic, Kan.</u>, 582 F.3d 1155,

1164 (10th Cir. 2009) ("Prosecutors are entitled to absolute immunity for their decisions

to prosecute, their investigatory or evidence-gathering actions, their evaluation of

evidence, their determination of whether probable cause exists, and their determination

of what information to show the court.").

Here, the prosecutor defendants correctly assert that all of the alleged

prosecutorial actions in this case are protected by absolute immunity.  Plaintiff alleges

that Wilson continued to prosecute the plaintiff's case when it should have been

dismissed, presented coached and false or contradictory testimony, did not properly

conduct the trial, and conspired with the other defendants to deny plaintiff a fair trial.  In

addition, plaintiff complains that Hurlburt protected Wilson for those actions taken

including failing to investigate in response to plaintiff's complaints and failing to

supervise and train deputy district attorneys concerning the prosecution of the plaintiff's

case.  All of the prosecutorial acts complained of by plaintiff, however, are those that are

intimately associated with the judicial process, undertaken as part of defendants'
prosecutorial duties, and undertaken in their role as an advocate.  Therefore, the
prosecutor defendants are absolutely immune from suit, and the plaintiff's claims
against them should be dismissed with prejudice.

### Motion to Dismiss by Defendants Kozak and Ramirez

Defendants Kozak and Ramirez seek dismissal of the Complaint with prejudice
pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) official
capacity claims should be dismissed, (2) plaintiff's federal claims are barred by the two-
year statute of limitations, and (3) plaintiff's state tort claims are barred by the Colorado
Governmental Immunity Act ("CGIA").

**Official Capacity Claims.**  Defendants first correctly assert that the claims
brought against them in their official capacities should be dismissed.  "A suit against an
individual officer of a government agency in his or her official capacity is really 'only
another way of pleading an action against an entity of which an officer is an agent.'"
Kennedy v. Finley, 2011 WL 3236174, at *3 (D. Colo. July 28, 2011) (quoting Kentucky
v. Graham, 473 U.S. 159, 165 (1985)).  "[A] plaintiff seeking to recover on a damages
judgment in an official-capacity suit must look to the government entity itself."  Id.
(quoting Kentucky v. Graham, 473 U.S. at 165)).  Here, the municipality is named as a
defendant, and plaintiff seeks only monetary damages.  Therefore, the official capacity
claims against Kozak and Martinez should be dismissed.  Furthermore, as noted by the
moving defendants in their Reply (Docket No. 17 at 2), plaintiff did not address this
argument in his Response, and this argument should be deemed confessed.

14

**Statute of Limitations.**  Defendants Kozak and Ramirez next assert that the plaintiff's § 1983 claims are time-barred.  Plaintiff's § 1983 claims are governed by the two-year statute of limitations contained in § 13-80-102, C.R.S.; Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law, rather than state law, determines when a federal claim accrues.  The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action.  Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006); Industrial Constructors Corp. v. United States Bur. of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the Complaint indicates on its face that the statute of limitations has expired.  See Aldrich v. McCulloch Props. Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  Here, the Complaint was filed on May 24, 2011.  With regard to defendant Ramirez, plaintiff alleges in Claim One that more than five years earlier on March 13, 2006, Ramirez conspired to falsify and submit a fraudulent Affidavit for Arrest Warrant and that on March 22, 2007, which was more than four years before the Complaint was filed, Ramirez gave coached, false, and contradictory testimony.  Regarding defendant Kozak, plaintiff alleges that four or five years before the Complaint was filed (between March 22, 2006, and March 22, 2007), plaintiff complained to him about Ramirz and Arndt and Kozak ordered an internal investigation, and that shortly after trial in March 2007, Kozak delivered the Internal Affairs report with several pages removed.  In Claim Two, plaintiff asserts that several defendants conspired to deprive him of his constitutional rights.  Regarding Ramirez, she allegedly conspired to falsify the Affidavit for Arrest Warrant and unlawfully

interfered with an ongoing civil dispute.  Regarding Kozak, plaintiff alleges that Kozak

"entered into the conspiracy to protect his officer."

The successful prosecution of such claims would not necessarily imply the

invalidity of any conviction that might have resulted from the prosecution of the plaintiff.

See Laurino v. Tate, 220 F.3d 1213, 1217 (10th Cir. 2002) (Plaintiff's claims for, *inter*

*alia*, arrest without probable cause and unlawful deprivation of liberty dismissed as

untimely.  "[A] suspect's proof that police lacked probable cause to arrest him does not

necessarily imply the invalidity or unlawfulness of his conviction for the underlying

offense."  Accrual of plaintiff's claim was not affected by Heck v. Humphrey, 512 U.S.

477 (1994)); Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 558 (10th Cir. 1999)

("Claims arising out of police actions toward a criminal suspect, such as arrest,

interrogation, or search and seizure, are presumed to have accrued when the actions

actually occur.").  Therefore, these claims did not accrue at the time the charges were

dismissed against the plaintiff but rather accrued when the plaintiff knew or had reason

to know of the existence and cause of injury which is the basis of these claims.  As

outlined above, all of these alleged acts occurred four to five years before the Complaint

here was filed.  Furthermore, plaintiff's allegations show that he was present during the

allegedly false arrest, illegal seizure, and false testimony in 2006 and 2007, became

aware of any alleged cover-up when he learned the results of the Internal Affairs

investigation in 2006, and received the allegedly incomplete copy of the report shortly

after his trial in March 2007.  Therefore, Claims One and Two for violation of the

plaintiff's constitutional rights are time-barred absent tolling.  See Wallace v. Kato, 549

U.S. 384, 397 (2007) ("the statute of limitations upon a § 1983 claim seeking damages

16

for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process").

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiff[] can prove no set of facts that toll the statute." Matthews v. Wiley, 744 F. Supp. 2d 1159, 1168 (D. Colo. 2010) (quoting Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n.13 (11th Cir. 2005)). "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." Garrett v. Arrowhead Imp. Ass'n, 826 P.2d 850, 855 (Colo. 1992). The issue of tolling is also governed by state law. Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995). Under Colorado law, "an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1099 (Colo. 1996). "The Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling." Braxton v. Zavaras, 614 F.3d 1156, 1160 (10th Cir. 2010).

Here, plaintiff asserts in his Response that a "possible resolution for this 'Fatal Defect' would be to Amend the Plaintiff's Complaint to include a request that the Court Toll all State Limitations for the duration of time that the charges existed against him. The Plaintiff was fighting for his life against these serious charges for a period of over three years." (Docket No. 12 at 3). Plaintiff, however, has not shown or even alleged

that any defendant wrongfully impeded his ability to bring his § 1983 claims.

Furthermore, the mere pendency of criminal charges is not an "extraordinary

circumstance" that would have prevented plaintiff from filing his claim despite diligent

efforts.  See Wallace v. Kato, 549 U.S. at 396 ("We know of no support . . . for the far-

reaching proposition that equitable tolling is appropriate to avoid the risk of concurrent

litigation.  As best we can tell, the only rationale for such a rule is the concern that

'petitioner would have had to divide his attention between criminal and civil cases.' . . .

But when has it been the law that a criminal defendant, or a potential criminal

defendant, is absolved from all other responsibilities that the law would otherwise place

upon him? . . .  Equitable tolling is a rare remedy to be applied in unusual

circumstances, not a cure-all for an entirely common state of affairs.").

Based upon the findings above, this court concludes that Claims One and Two

as currently plead are barred by the statute of limitations.  The court notes, however,

that in his Response (Docket No. 12), plaintiff also asserts that his first claim alleging

constitutional violations against defendants Kozak, Ramirez, Arndt, Hurlbert, and Wilson

are correctable by clarifying that such claim is a claim for malicious prosecution

pursuant to 42 U.S.C. § 1983.  He states his "initial pleading erroneously omitted to

state the allegations that the Constitutional Violations pursuant to the 4th Amendment of

the US Constitution were a result of Malicious Prosecution."  (Docket No. 12 at 2).  He

correctly asserts that it is well established that such a claim could not be brought until

the charges against him were resolved in his favor, which in this case was on May 29,

2009.  See Mondragon v. Thompson, 519 F.3d 1078, 1083 (10th Cir. 2008) ("[A] due

process claim for malicious prosecution arises only once the original action, whatever

18

form it has taken, has been terminated in favor of the plaintiff.  Because the statute of

limitations does not start running before the elements of a claim are satisfied, the statute

of limitations for this due process claim cannot start until the plaintiff has achieved a

favorable result in the original action.") (citations, quotations, and footnote omitted).

Therefore, plaintiff contends that his Complaint, filed on May 24, 2011, was filed within

the two-year limitations period.

Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to

amend] when justice so requires."  "Refusing leave to amend is generally only justified

upon a showing of undue delay, undue prejudice to the opposing party, bad faith or

dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility

of amendment."  Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Frank v.

U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)).  The court notes that the plaintiff

has yet to move to amend his Complaint to state a § 1983 malicious prosecution claim.

The court further notes, however, that in their Reply, Kozak and Ramirez appear to

argue that such an amendment would be futile because the plaintiff cannot allege that

their alleged actions in 2006 and 2007 violated a constitutional right to be free from

malicious prosecution.

A § 1983 malicious prosecution claim generally requires the following

elements: "(1) the defendant caused the plaintiff's continued confinement or

prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was

no probable cause to support the original arrest, continued confinement, or

prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained

damages."  Novitsky v. City of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007).

19

Defendants assert that the plaintiff has failed to allege several of these elements, namely, that Ramirez acted without probable cause and that defendants acted with malice.

Even if the court were to read Claim One as having been amended to raise such a § 1983 malicious prosecution claim, the court finds that the facts as alleged against defendant Kozak do not state a claim for malicious prosecution.  Plaintiff does not make any allegations that Kozak caused plaintiff's continued confinement or prosecution.  Instead, plaintiff merely asserts (1) that after plaintiff filed a complaint against Arndt and Ramirez with defendant Police Chief Kozak, Kozak ordered a sergeant to conduct an internal affairs investigation, the results of which as communicated to plaintiff by Kozak did not satisfy plaintiff; (2) that after plaintiff was convicted, he returned to the Police Department and alleged to Kozak that Arndt and Ramirez had committed perjury during the trial; (3) that after plaintiff subpoenaed the Internal Affairs Investigation Report, Kozak delivered the Report to the Eagle County courthouse, but allegedly he had removed some of the pages, which implicates Kozak in a conspiracy to cover up Arndt's and Ramirez's actions.  As asserted by the defendants, "Kozak's actions occurred after Ramirez and Arndt had filed the allegedly false affidavit and did not contribute to the initiation of criminal proceedings against Plaintiff.  Additionally, Plaintiff provides no facts alleging that Kozak's handling of the investigation contributed to Plaintiff's prosecution or that Kozak delivered the allegedly incomplete report with malice."  (Docket No. 17 at 6, ¶ 12).  Therefore, amendment of Claim One to include a claim for malicious prosecution under § 1983 as against Kozak would clearly be futile.

20

Regarding defendant Ramirez, defendants assert that plaintiff's allegations regarding Ramirez conspiring to falsify and submit a fraudulent Affidavit for Arrest Warrant which claimed false statements attributed to plaintiff and Bradley and omitted critical elements, as well as her allegedly "coached, false, and contradictory testimon[y]" at trial, do not establish a constitutional violation.  Defendants set forth several arguments in support of what essentially is a futility argument.  See Docket No. 17 at 4-6.  However, with regard to defendant Ramirez, this court is of the opinion that the better course of action would be to have plaintiff tender a proposed amended complaint which pleads this claim and have the defendant await to assert any claims for dismissal or for summary judgment at that time.  See Calvert v. Ediger, 415 Fed. Appx. 80, 83, 2011 WL 754839, at *3 (10th Cir. Mar. 4, 2011) ("[A]n officer typically does not proximately cause a malicious prosecution because the independent decisions of the prosecutor in bringing the charge and the court in issuing a indictment or warrant constitute superseding causes that break the chain of causation. . . .   Nonetheless, officers are not shielded from liability if a causal connection can be established demonstrating that the prosecutor's and court's actions were not truly independent causes.").

**CGIA.**  Defendants next assert that the plaintiff's state law claims contained in Claims Three and Four against defendant Ramirez for malicious prosecution, abuse of process, false imprisonment, and illegal seizure are barred by the CGIA and thus should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Under the CGIA, anyone claiming to have suffered an injury by a public entity or employee must file a written notice to the entity within 180 days after the discovery of such injury, regardless of whether the

person knew all of the elements of the claim or of a cause of action for such injury.  See

§ 24-10-109(1), C.R.S.  Compliance with this 180-day notice requirement is a

jurisdictional prerequisite, and failure to comply with it is an absolute bar to suit.  Id., see

Gallagher v. Board of Tr. for Univ. of N. Colo., 54 P.3d 386, 393 (Colo. 2002) (en banc).

"[N]on-claim statutes and the issue of subject matter jurisdiction are not subject to

equitable defenses such as waiver, tolling, or estoppel." Gallagher, 54 P.3d at 393.  In

addition, "the judicially-constructed continuing violation doctrine cannot be used to

remedy an untimely filing under the CGIA." Id.  "For purposes of the CGIA, . . . the

notice period is triggered when a claimant has *only discovered* that he or she has been

wrongfully injured." Id. at 391.  "[T]he plaintiff need not yet know the cause of the injury

nor must all elements of the claim have ripened before [the plaintiff] must file [his] notice

of claim. . . . [T]he plaintiff's 180-day time limit may expire if [he] waits to discover the

cause of [his] injury before filing pursuant to the CGIA . . . . [T]he trial court is the pre-

trial fact-finder to determine whether notice was timely filed-that is, when the injury was

discovered by the claimant. . . .  The plaintiff has the burden of proving jurisdiction and

the trial court will not construe inferences in favor of the plaintiff." Id. (citation omitted).

In this case, the defendants assert that plaintiff learned of his false arrest, illegal

seizure, and the charges brought against him at the very latest on March 13, 2006,

when he alleges "he was arrested in his home at gunpoint and charged." (Docket No. 1,

Complaint at ¶ 16).  Plaintiff thus had 180 days from that date to file his notice of claim,

but he did not do so until March 7, 2008.  Therefore, defendants assert that the plaintiff

did not file a timely notice of claim under the CGIA for his state law claims of malicious

prosecution, false imprisonment, and illegal seizure, and such claims are thus barred.

22

Plaintiff responds that he timely provided notice because on September 12, 2006, he "provided to Defendant Kozak through email transmission a 'Good Faith' effort to provide notice to The Avon Colorado Police Department and its Officers, including Defendants Arndt and Ramirez of a pending Tort Claim against them.  This Notice outlined the Plaintiff's complaints against Defendants Arndt and Ramirez, the costs and damages accrued by the Plaintiff as a result of the actions of Arndt and Ramirez on March 13, 2006, and a statement to consider this email a Torts Claims Notice."  (Docket No. 12 at 5, ¶ 21).  Plaintiff further states that "[w]hile this notice may in fact have been materially deficient in some area under the CGIA, Defendant Kozak accepted this Notice without objection and launched an Internal Affairs Investigation based on the Notice."  (Docket No. 12 at 5 ¶ 22).  Finally, plaintiff asserts that "[i]t is well established law that claims for malicious prosecution could not be brought until the charges were resolved in the Plaintiff's favor.  The charges against the Plaintiff were dismissed on May 29, 2009.  The Plaintiff's complaint was filed on May 24, 2011 within Colorado's Statute of limitations. Notice of Tort was provided within 180 days as required by the CGIA.  Therefore the Plaintiffs claims for malicious prosecution against Defendant Ramirez do not lack subject matter jurisdiction and were filed in a timely manner." (Docket No. 12 at 5 ¶ 23).

Defendants correctly assert in their Reply, however, that even accepting plaintiff's allegations as true, he did not fulfill the CGIA notice requirements.  First, the CGIA requires that notice "be filed with the governing body of the public entity or the attorney representing the public entity." § 24-10-109, C.R.S.  Plaintiff did not do so. Instead, he improperly sent notice to defendant Kozak, the Chief of Police.  In addition,

the plaintiff's alleged e-mail was sent a day after the 180-day period expired.

Defendants note that according to the plaintiff's Complaint, he was arrested and

charged on March 13, 2006, and 180 days from that date would have been Saturday,

September 9, 2006.  Consequently, plaintiff had until Monday, September 11, 2006, to

file notice.  See Matthews v. City & County of Denver, 20 P.3d 1227, 1228 (Colo. App.

2000) (notice required to be filed on the next business day when the 180-day period

ends on a weekend or holiday).  Plaintiff, however, did not allegedly send his e-mail to

Kozak until September 12, 2006.

Also, plaintiff is incorrect concerning when his notice of claim was required for a

malicious prosecution claim.  "[A]lthough the successful termination of criminal

proceedings generally is a condition precedent to recovery in a malicious prosecution

action . . . ., **claims for malicious prosecution accrue for purposes of filing a notice**

**under the [CGIA] when claimants are aware that allegedly improper charges have**

**been filed against them**."  Masters v. Castrodale, 121 P.3d 362, 364-65 (Colo. App.

2005) (emphasis added).  Similarly, for purposes of filing a CGIA notice of claim, claims

for false arrest and illegal seizure accrue no later than the dates on which the wrongful

acts occur.  "The injuries from a false arrest or false imprisonment do not result from

learning that the charges underlying the arrest and imprisonment were inadequate; the

injuries are inherent in the acts themselves."  Id.

In sum, plaintiff's state law claims are barred.

**Motion to Dismiss by Defendant Town of Avon**

Plaintiff's Sixth and Seventh Claims for Relief are against defendant Town of

Avon.  In Claim Six, which is brought pursuant to § 1983, plaintiff alleges that "[t]he

Avon Police Department developed and maintained policies or customs exhibiting

deliberate indifference to the constitutional rights of person [sic] in the Town of Avon

Colorado, which caused the violation of the Plaintiff's Rights."  (Docket No. 1 at 18).

Plaintiff further asserts that "[i]t was/is the policy of the Avon Police Department to

inadequately supervise and train its police officers, including Arndt, Ramirez, and

Kozak, thereby failing to adequately discourage further constitutional violations on the

part of its police officers" and "to protect police officers at all costs from public complaint

as evidenced by Chief Kozak first attempting to explain the actions of Arndt and

Ramirez in an Internal Affairs Investigation and then, upon subpoena of the file, illegally

removing documents to protect those officers."  (Docket No. 1 at 19).  As a result,

plaintiff further alleges that "police officers of the Town of Avon, including Defendants

Arndt, Ramirez, and Kozak, believed that their actions would not be properly monitored

or supervised and that misconduct would not be investigated or sanctioned, but would

be tolerated and protected."  (Docket No. 1 at 19).  These purported policies and

customs allegedly "demonstrate a deliberate indifference on the part of the Town of

Avon to the constitutional rights of persons within the Town of Avon, and were the

cause of the violations of Plaintiff's rights alleged herein."  (Docket No. 1 at 19).

In Claim Seven, which is based upon a theory of *respondeat superior*, plaintiff

claims that the Town "is liable for the Constitutional Rights Violations, false arrest and

imprisonment, illegal seizure of property committed by Officers Arndt and Ramirez.

Town of Avon employed the officers who committed these outrages against the Plaintiff

while in their employ."  (Docket No. 1 at 19).  In addition, plaintiff asserts that the town

"is liable for conspiracy and unlawful removal of subpoenaed documents by Defendant Brian Kozak while he was Chief of Police.  Town of Avon employed Kozak while he entered this conspiracy to protect these officers while acting in the scope of his employment."  (Docket No. 1 at 20).

Defendant Town of Avon seeks dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that plaintiff's § 1983 claim is time barred and does not identify a custom or policy by which the Town would be responsible for any alleged constitutional violations.

The Town correctly asserts that all of the actions alleged occurred between 2006 and 2007 and this action was commenced on May 24, 2011.  Therefore, as discussed above with respect to the motion to dismiss by defendants Kozak and Ramirez, plaintiff's § 1983 claims against the Town are untimely and should be dismissed.

Furthermore, it is settled that municipalities cannot be held responsible for the actions of its employees through the theory of *respondeat superior*.   See Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); Bryson v. City of Okl. City, 627 F.3d 784, 788 (10th Cir. 2010) ("A municipality may not be held liable under § 1983 merely because its employees inflicted injury on the plaintiff.").  Therefore, Claim Seven, which is expressly based upon the theory of *respondeat superior*, should be dismissed.

Based upon these findings, and in the interest of judicial economy, the court will not address defendant's additional arguments for dismissal of Claims Six and Seven.

**UNSERVED DEFENDANT ARNDT**

This action was commenced over eight months ago on May 24, 2011.  As noted above, in a Status Conference held on August 30, 2011, plaintiff was directed to serve defendant Jeremy Arndt forthwith and file Proof of Service with the court.  (See Docket No. 15).  No such proof of service has yet been filed by the plaintiff, and defendant Arndt has not answered or otherwise responded to the Complaint.

Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).  Based upon the above, absent a showing of good cause for the plaintiff's failure to serve defendant Arndt, it is recommended that this action be dismissed without prejudice as against defendant Arndt for failure to prosecute and failure to serve prosecutor Arndt.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss Prosecutor Defendants (Docket No. 5) be **granted** and that the Complaint be dismissed with prejudice as against defendants Mark Hurlbert and Tamar Wilson.  It is further

**RECOMMENDED** that the Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (Docket No. 9) filed by defendants Kozak and Ramirez be **granted as follows**. With regard to defendant Kozak, it is recommended that the motion be granted and that the Complaint be dismissed with prejudice.  With regard to defendant Ramirez, it is

recommended that the motion be granted and that the Complaint be dismissed without prejudice, but allowing the plaintiff to seek leave to amend his pleading solely with respect to a malicious prosecution claim pursuant to 42 U.S.C. § 1983 against Ramirez in her individual capacity.  It is further

**RECOMMENDED** that Defendant Town of Avon's Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket No. 16) be **granted**.  It is further

**RECOMMENDED** that the Complaint be dismissed without prejudice as against unserved defendant Arndt pursuant to Fed. R. Civ. P. 4(m) based upon plaintiff's failure to prosecute and failure to serve Arndt unless plaintiff shows good cause for failing to serve Arndt.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  February 1, 2012                      s/ Michael J. Watanabe
       Denver, Colorado                      Michael J. Watanabe
                                             United States Magistrate Judge